UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALTER R. REID,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CMO JASON NASH, et al.,<br><br>　　　　Defendants. | Case No. 1:22-cv-00549-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION PROCEED ON PLAINTIFF'S EIGHTH AMENDMENT CLAIM AGAINST DEFENDANT GREEN FOR DELIBERATE INDIFFERENCE TO HIS SERIOUS MEDICAL NEEDS, AND THAT ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED<br><br>(ECF No. 1)<br><br>OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS<br><br>ORDER DENYING REQUEST FOR APPOINTMENT OF PRO BONO COUNSEL<br><br>(ECF No. 16)<br><br>ORDER DIRECTING CLERK TO ASSIGN DISTRICT JUDGE |

Walter R. Reid ("Plaintiff") is a state prisoner proceeding *pro se* in this civil rights action filed pursuant to 42 U.S.C. § 1983.  Plaintiff filed the complaint commencing this action

\\\

1

on April 26, 2022.  (ECF No. 1).[1]  Plaintiff alleges that he had urinary retention issues and complains about the subsequent treatment he received (or failed to receive), including the failure to properly and timely remove a suprapubic catheter.

The Court reviewed the complaint and found that the following claim should proceed past screening: Plaintiff's Eighth Amendment claim against defendant Green for deliberate indifference to his serious medical needs.  (ECF No. 15).  The Court also found that no other claims should proceed past screening.  (Id.).

The Court gave Plaintiff thirty days to either: "a. File a First Amended Complaint; b. Notify the Court in writing that he does not want to file an amended complaint and instead wants to proceed only on his Eighth Amendment claim against defendant Green for deliberate indifference to his serious medical needs; or c. Notify the Court in writing that he wants to stand on his complaint."  (Id. at 16).  On February 21, 2023, Plaintiff filed his response to the Court's screening order, stating that he wants to stand on his complaint and have it reviewed by a district judge.  (ECF No. 16).[2]

Accordingly, the Court issues these findings and recommendations to a district judge consistent with the screening order.  Plaintiff has fourteen days from the date of service of these findings and recommendations to file his objections.

**I.     SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or

---

[1] The complaint was transferred to the United States District Court for the Eastern District of California on May 9, 2022.  (ECF No. 5).  However, Plaintiff did not pay the filing fee until September 9, 2022.

[2] In Plaintiff's response, Plaintiff appears to include additional factual allegations.  However, as Plaintiff chose to stand on his complaint instead of filing an amended complaint, the Court will not address any factual allegations that are included in Plaintiff's response but not in his complaint.  Additionally, the Court will not address any objections raised by Plaintiff.  Instead, Plaintiff should file objections to these findings and recommendations.

As to Plaintiff's request for appointment of pro bono counsel, which is also included in his response, it is DENIED without prejudice for the reasons in the Court's prior order denying Plaintiff's request for pro bono counsel, which was issued on January 23, 2023 (ECF No. 15, p. 14).

that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).  The mere possibility of misconduct falls short of meeting this plausibility standard.  Id. at 679.  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted).  Additionally, a plaintiff's legal conclusions are not accepted as true.  Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

## II. SUMMARY OF PLAINTIFF'S COMPLAINT

Plaintiff alleges as follows in his complaint:

On July 31, 2021, at approximately 10:00 a.m., while incarcerated at Avenal State Prison, Plaintiff went to the clinic on the yard because he was unable to urinate.  Plaintiff was sent to the central medical unit, where they inserted a catheter.  The catheter relieved approximately 400 units of urine.  A urine analysis revealed an infection, and Plaintiff was administered antibiotics.  Plaintiff was admitted to the infirmary for overnight observation.

Later that same day, Plaintiff was still unable to urinate.  The nurse re-inserted a catheter, which was to remain in place.  This catheter ruptured something, and thick blood was coming through the catheter without urine.[3]  The blood clogged the catheter and forced its way

---

[3] The Court notes that this nurse is not named as a defendant in this action.

1  passed the catheter and through Plaintiff's penis.

2  Plaintiff's bladder was filling up with blood and urine, and Plaintiff was in excruciating pain. Plaintiff rang for the nurse because there was blood all over him and the bed. Plaintiff was finally sent to the emergency room at Adventist Medical in Hanford at approximately 1:00 a.m.

Adventist staff worked on Plaintiff for several hours without success, and they attempted to transfer Plaintiff to a different hospital that had a urologist. That hospital refused to accept Plaintiff unless he had a catheter in place.

Adventist tried three times to re-insert a catheter, but the attempts were unsuccessful. Finally, a general surgeon inserted a suprapubic catheter ("SPC"), which immediately relieved over 700 units of blood and urine. At this point Adventist decided against the transfer and sent Plaintiff back to the prison infirmary.

Because Plaintiff's bladder was overextended, the catheter was not placed deep enough. Once Plaintiff's bladder had relaxed and regressed to normal it slid off the end of the catheter, rendering it non-functional. The catheter was inside the bladder wall, but it was not inside the bladder itself.

On August 1, 2021, and August 2, 2021, Plaintiff was issued 5 milligrams of Finasteride and 0.4 milligrams of Flomax for prostate related issues, which aided his urination.

On August 12, 2021, Plaintiff had his first consultation with defendant Dr. Hou, a urologist. He made a quick observation of the SPC. Plaintiff asked defendant Hou to remove it because it was non-functional, irritating, and painful. Additionally, Plaintiff was now urinating normally. However, defendant Hou wanted to leave it in place pending tests, which included a CT scan and a cystoscopy.

On September 10, 2021, defendant Hou performed a bladder examination via cystoscopy, which revealed no cancer and no cyst. It also confirmed that the catheter was not inside the bladder. Defendant Hou attempted to remove the catheter, but was unable to. Defendant Hou told Plaintiff he needed to be rescheduled to have it removed surgically.

On September 13, 2021, Plaintiff was sent back to Adventist so that its staff could

remove the SPC, since it was Adventist staff that originally inserted it. Several doctors were unable to remove the SPC. The spear-headed rod used to insert and remove this type of SPC was stabbing Plaintiff in the bladder, causing extreme pain. Adventist staff gave Plaintiff morphine. A CT scan was conducted, and Adventist staff claimed that the SPC was properly in place. They sent Plaintiff back to the prison with instructions, including to have the SPC removed within one to two days.

On September 30, 2021, Plaintiff was informed that his surgery with defendant Hou was cancelled.

On October 2, 2021, Plaintiff submitted a grievance in hopes of getting intervention to expedite his surgery.

At some point, he had his sister call defendant Inmate Health Care Inquiry, which is supposed to be a resource for families to reach out to. They told his sister not to call unless it was serious.

On October 6, 2021, Plaintiff had a video conference with defendant Hou. He recommended an urgent reschedule for surgery. He also gave Plaintiff the option of seeking a second opinion, but advised Plaintiff this would likely prolong the outcome.

On October 12, 2021, a nurse informed Plaintiff that his surgery was again cancelled because someone was unaware that the surgery needed to be done in the operating room.

On October 17, 2021, Plaintiff complained to a nurse that his pain was intensifying. The nurse told Plaintiff that ibuprofen and related medications were stopped because of the pending surgery. She asked Plaintiff if defendant Dr. K[4] issued Plaintiff Tylenol 3 previously, and Plaintiff responded "yes." She then asked the weekend doctor, defendant Physician Assistant Green, to renew the prescription. Defendant Green refused, stating it was only superficial. Defendant Green also refused to examine Plaintiff.

The following day, defendant K examined Plaintiff. She observed blood coming through the catheter and immediately issued the T3 and ran lab tests. The tests revealed that

---

[4] It appears that Plaintiff only knows the first letter of this defendant's last name.

5

Plaintiff had redeveloped an infection, and he was re-issued antibiotics.

On October 22, 2021, Plaintiff was informed that the lab test revealed that Plaintiff's kidneys were struggling.

On October 28, 2021, Plaintiff finally had surgery to remove the SPC. Plaintiff is unsure of the timeframe of the first infection related to the SPC.

According to Plaintiff's research, the risks involved with an SPC include infections, blockages, and bleeding. Plaintiff experienced four out of the five problems listed to watch out for. "It" also warns that the longer the use, the greater the risk, and it should only be used as long as necessary. "It" also talks about the importance of the SPC being inserted correctly.

Nobody knew how to remove the SPC and everyone was relying on someone else to figure it out.

Because the SPC was not inside the bladder, the flexible arms at the end of the SPC were irritating and aggravating the bladder wall. Every time Plaintiff moved he experienced severe pain and the catheter arms were damaging the bladder wall.

Plaintiff also complains about the responses he received to his grievances. The health care appeals system did nothing on Plaintiff's behalf.

Finally, Plaintiff requests appointment of pro bono counsel.[5]

Plaintiff attached approximately thirty-five pages of exhibits to his complaint.

### III. ANALYSIS OF PLAINTIFF'S COMPLAINT

#### A. Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

---

[5] Plaintiff's request for appointment of pro bono counsel was denied. (ECF No. 15, p. 14).

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. County of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark County Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant

holds a supervisory position, the causal link between the supervisory defendant and the claimed constitutional violation must be specifically alleged.  Iqbal, 556 U.S. at 676-77; Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  To state a claim for relief under section 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation," Hansen, 885 F.2d at 646 (citations and internal quotation marks omitted).

For instance, a supervisor may be liable for his or her "own culpable action or inaction in the training, supervision, or control of his [or her] subordinates," "his [or her] acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others."  Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

### B.  Eleventh Amendment Immunity

"The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, an arm of the state, its instrumentalities, or its agencies.  However, under *Ex Parte Young*, the Eleventh Amendment does not bar actions seeking only prospective declaratory or injunctive relief against state officers in their official capacities."  Fireman's Fund Ins. Co. v. City of Lodi, Cal., 302 F.3d 928, 957 n. 28 (9th Cir. 2002) (citations and internal quotation marks omitted).  Additionally, the Eleventh Amendment does not bar suits seeking damages against state officials in their individual capacities.  Hafer v. Melo, 502 U.S. 21, 30-31 (1991); Porter v. Jones, 319 F.3d 483, 491 (9th Cir. 2003).

"California prisons are entitled to Eleventh Amendment immunity."  Lopez v. Wasco State Prison, 2008 WL 5381696, at *4 (E.D. Cal. Dec. 22, 2008) (citing Keel v. California Dep't of Corr. & Rehabilitation, 2006 WL 1523121, at *2 (E.D. Cal. May 30, 2006), report and

1  recommendation adopted sub nom. Keel v. CDCR, 2006 WL 2501527 (E.D. Cal. Aug. 28,
2  2006)).
3       Here, Plaintiff sues defendant Health Care Services Headquarters and Inmate Health
4  Care Inquiry.  Plaintiff identifies both as part of the California Department of Corrections and
5  Rehabilitation, which is a state agency.  As Plaintiff appears to allege that Health Care Services
6  Headquarters and Inmate Health Care Inquiry are state agencies, they are entitled to Eleventh
7  Amendment immunity from Plaintiff's claims.
8                C.  Deliberate Indifference to Serious Medical Needs in Violation of the Eighth
9                    Amendment
10      "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an
11 inmate must show 'deliberate indifference to serious medical needs.'"  Jett v. Penner, 439 F.3d
12 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  This requires
13 Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a
14 prisoner's condition could result in further significant injury or the unnecessary and wanton
15 infliction of pain,'" and (2) that "the defendant's response to the need was deliberately
16 indifferent."  Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992))
17 (citation and internal quotations marks omitted), overruled on other grounds by WMX
18 Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (*en banc*).
19      Deliberate indifference is established only where the defendant *subjectively* "knows of
20 and disregards an *excessive risk* to inmate health and safety."  Toguchi v. Chung, 391 F.3d
21 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted).
22 Deliberate indifference can be established "by showing (a) a purposeful act or failure to
23 respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."
24 Jett, 439 F.3d at 1096 (citation omitted).  Civil recklessness (failure "to act in the face of an
25 unjustifiably high risk of harm that is either known or so obvious that it should be known") is
26 insufficient to establish an Eighth Amendment violation.  Farmer v. Brennan, 511 U.S. 825,
27 836-37 & n.5 (1994) (citations omitted).
28      A difference of opinion between an inmate and prison medical personnel—or between

medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004). Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

The Court finds that Plaintiff sufficiently alleges that he had a serious medical need. He also alleges numerous facts that may constitute negligence, including the failure to promptly transfer Plaintiff to a specialist after the SPC was inserted, the inability to successfully remove the catheter, and the delays in removing the catheter (including one delay because someone was unaware that the surgery needed to occur in the operating room). Plaintiff also alleges a difference of opinion between Adventist staff and prison medical staff. Adventist staff told Plaintiff that his SPC was inserted correctly and that it should be removed within 1-2 days, while prison medical staff told Plaintiff that it was not inserted correctly and that surgery would be required.

However, neither negligence nor a difference of opinion between medical professionals is sufficient to establish deliberate indifference. Plaintiff was repeatedly provided with medical treatment by the medical defendants. Plaintiff was repeatedly seen by medical professionals, numerous tests were conducted, he was sent to the Adventist emergency room, various medical professionals attempted to remove the SPC, the SPC was eventually surgically removed, and Plaintiff was provided with medication (including medication for the pain he was experiencing).

There are no allegations suggesting that any medical professional defendant knew that Plaintiff had a serious medical need yet disregarded that need, or that the course of treatment that any medical professional defendant chose was medically unacceptable under the

circumstances (except, as addressed below, defendant Green). Moreover, Plaintiff does not identify any individual staff member at Adventist who was responsible for his medical care. As discussed above, Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights.

As to defendant Nash, Plaintiff appears to sue him because he oversees the medical system at Avenal State Prison. However, as discussed above, supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between the supervisory defendant and the claimed constitutional violation must be specifically alleged. As Plaintiff includes no factual allegations regarding defendant Nash, Plaintiff fails to state a claim against defendant Nash.

The analysis is different as to defendant Green. Plaintiff alleges that he was in pain because of the catheter, and that on October 17, 2021, Plaintiff complained to a nurse that his pain was intensifying. The nurse told Plaintiff that ibuprofen and related medications were stopped because of the pending surgery. She asked Plaintiff if defendant K issued Plaintiff Tylenol 3 previously, and Plaintiff responded "yes." She then asked the weekend doctor, defendant Green, to renew the prescription. Defendant Green refused, stating it was only superficial.

Thus, Plaintiff alleges that defendant Green was informed about Plaintiff's pain. Moreover, Plaintiff was given pain medications for the same issue both before and after requesting them on October 17, 2021. However, without even examining Plaintiff, defendant Green refused to provide the medications. Liberally construing Plaintiff's complaint, the Court finds that Plaintiff's Eighth Amendment claim against defendant Green for deliberate indifference to his serious medical needs should proceed past screening.

### D. Fourteenth Amendment Due Process

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). The procedural guarantees of the Fifth and Fourteenth Amendments' Due

11

Process Clauses apply only when a constitutionally protected liberty or property interest is at stake.  Ingraham v. Wright, 430 U.S. 651, 672-73 (1977).

Plaintiff's second claim is for violation of his due process rights.  The basis of Plaintiff's claim is not clear.  Plaintiff alleges that he should have received immediate care, but Plaintiff does not identify any process that he should have been provided before being deprived of a liberty interest.  Accordingly, Plaintiff fails to state a Fourteenth Amendment due process claim based on his allegations that he was not immediately provided with medical care.  The Court notes that as Plaintiff's allegations involve inadequate medical care, this claim is more appropriately brought under the Eighth Amendment, which is addressed above.

To the extent Plaintiff complains about the processing of his grievances, Plaintiff's due process claim also fails.  "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (alteration in original) (quoting Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).  As Plaintiff does not have a liberty interest in the processing of his grievances, Plaintiff fails to state a claim based on his allegations that his grievances were not appropriately processed.

**IV.     CONCLUSION, ORDER, AND RECOMMENDATIONS**

The Court has screened the complaint and finds that Plaintiff's Eighth Amendment claim against defendant Green for deliberate indifference to his serious medical needs should proceed past the screening stage.  The Court also finds that all other claims should be dismissed.

As Plaintiff was given leave to amend but chose to stand on his complaint, the Court

does not recommend granting further leave to amend.

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1. This case proceed on Plaintiff's Eighth Amendment claim against defendant Green for deliberate indifference to his serious medical needs; and

2. All other claims and defendants be dismissed.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within fourteen (14) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Additionally, IT IS ORDERED that the Clerk of Court is directed to assign a district judge to this case.

IT IS SO ORDERED.

Dated:  **February 22, 2023**              /s/ Erica P. Grosjean
                                            UNITED STATES MAGISTRATE JUDGE