UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALTER R. REID,<br><br>   Plaintiff,<br><br>   v.<br><br>BARRY GREEN,<br><br>   Defendant. | Case No.   1:22-cv-00549-KES-EPG<br><br>FINDINGS AND RECOMMENDATIONS TO DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 41)<br><br>OBJECTIONS, IF ANY, DUE WITHIN 30 DAYS |

Plaintiff Walter R. Reid is a state prisoner proceeding *pro se* in this civil rights action filed pursuant to 42 U.S.C. § 1983. (ECF No. 23). The case is proceeding on Plaintiff's Eighth Amendment claim against Defendant Green for deliberate indifference to his serious medical needs. (ECF Nos. 23, 24).

On November 21, 2023, Defendant Green filed a motion for summary judgment. (ECF No. 41). Green argues that there is no evidence that he was deliberately indifferent to Plaintiff's medical condition on October 17, 2021. (ECF No. 41). Plaintiff filed an opposition on December 11, 2023 (ECF No. 49). Defendant filed a reply on December 14, 2023. (ECF No. 50).

For the following reasons, the Court recommends denying Defendant's motion for summary judgment.

**I.   PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff's First Amended Complaint (ECF No. 23) alleges as follows:

1

Plaintiff, while housed in Avenal State Prison in July of 2021, suffered from a severe urination deficiency. On July 31, 2021, at approximately 10:00 a.m., he went to the clinic on the yard because he was unable to urinate on his own.

Plaintiff was sent to the Central Medical Unit, where they inserted a catheter, which relieved 400-plus units of urine. A urine analysis revealed an infection, and Plaintiff was administered antibiotics. Plaintiff was then admitted to the infirmary for overnight observation.

Later that same day, Plaintiff was still unable to urinate on his own, and the on-site male nurse reinserted a catheter, to remain in place. However, the catheter ruptured something, and thick blood began coming through the catheter without urine. The blood clogged the catheter and forced its way passed the catheter and through Plaintiff's penis.

Plaintiff's bladder was filling up with blood and urine, and he was in extreme pain. Plaintiff was finally sent to the Adventist Medical emergency room in Hanford on August 1, 2021, at approximately 1:00 a.m.

Adventist doctors tried three times to reinsert a catheter but were unsuccessful. Finally, a surgeon general inserted a suprapubic catheter, which relieved over 700 units of blood and urine.

On September 13, 2021, Plaintiff was sent back to the Adventist Medical emergency room to have the suprapubic catheter removed. Plaintiff was administered morphine after being stabbed in the bladder.

On October 17, 2021, Plaintiff notified Nurse Angarra that his pain was increasing daily. She then stated that his ibuprofen and other related medications were stopped due to an upcoming surgery. She then asked if Dr. K had previously issued Tylenol 3, to which Plaintiff replied yes. Nurse Angarra then requested that Defendant Green, a Physician Assistant, renew the prescription for Tylenol 3. He refused, stating it was only superficial. He also "refused a cursory glance and examination at [Plaintiff's] request as well as Nurse Angarra." (ECF No. 23, p. 5 (errors in original).

The following day, Plaintiff was seen by Dr. K. Once she observed blood coming through the catheter, she, without hesitation, prescribed Tylenol 3 and conducted a lab test that revealed an infection which Defendant Green should have been aware of through the summoning of

medical care by Plaintiff and Nurse Angarra. Antibiotics also had to be prescribed for the infection due to the unreasonable medical treatment provided by Defendant Green.

Defendant Green knew, or should have known, that Plaintiff was suffering from a bladder infection on October 17, 2021. Instead of treating Plaintiff, he willfully refused to provide medical care. Defendant Green ignored Plaintiff's complaint, with blood coming out of his suprapubic catheter.

Plaintiff received surgery on October 28, 2021, and remained on medications for his infection.

In its screening order, the Court allowed the following claim to proceed: Plaintiff's Eighth Amendment claim against Defendant Green for deliberate indifference to Plaintiff's serious medical needs. (ECF No. 24).

## II. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Green filed a motion for summary judgment on November 21, 2023. (ECF No. 41). Defendant argues that there is no evidence that he was deliberately indifferent to Plaintiff's condition on October 17, 2021. He asserts that medical records show that the suprapubic catheter was not infected. Moreover, Plaintiff was given regular Tylenol as part of his treatment plan. Defendant also argues that the Court should grant summary judgment on Plaintiff's claim for punitive damages because the undisputed facts show that Plaintiff cannot prove the elements of such a claim for damages. Moreover, Defendant argues that he is entitled to qualified immunity because it would not have been clear to a reasonable prison official under the circumstances encountered by Defendant that his alleged conduct violated clearly established law.

Plaintiff filed an opposition to Defendant's motion. He argues that disputes of fact preclude summary judgment. Plaintiff argues that there were indications of infection, which were noticed by Nurse Angarra. Additionally, his pain level was very high. Nurse Angarra notified Defendant Green that there were sediments along the catheter tube. Nevertheless, Defendant Green refused to see or examine Plaintiff. The next day, October 18, 2021, Dr. Kandkhorova discovered that Plaintiff was suffering from a bacterial infection. She prescribed the antibacterial antibiotic Levaquin to treat the infection and Tylenol 3 to reduce the pain. Plaintiff also claims that Defendant Green admitted to his hiring authority that he knew Plaintiff was experiencing

chronic abdominal pain or discomfort and that Plaintiff's suprapubic catheter had malfunctioned, however he found no reason to provide medical care or examine Plaintiff. Moreover, due to the delay in treatment, the suprapubic catheter became extremely difficult to remove as it became more and more dislodged in his intramuscular portion of his bladder.

### III.  FACTS

The Court has reviewed the evidence submitted by the parties in support of their positions.

To begin with, both parties submitted various medical records regarding Plaintiff's condition and interactions with Defendant Green. The following are chronologically relevant excerpts of those records:

> 10/14/21, RN Angara: "1100—dressing changed around suprapubic catheter site, noted some redness around the taped area, no drainage—will continue to monitor, awaits schedule for catheter removal." (ECF No. 49, at p. 17)
>
> 10/14/21, RN Angelita, 13:54: "Request for Service . . . Primary Diagnosis: Suprapubic catheter dysfunction, Ordering Provider: Neltya Kandkhorova . . . Reason for request: remove surgically supra pubic catheter." (ECF No. 49, at p. 28-29)
>
> 10/17/21, RN Angara: "1030—wound care—dressing changed to suprapubic catheter site, no sign of skin infection to the site, noted some sediments along the catheter tube." (ECF No. 49, at p. 19)
>
> 10/17/21, RN Angara: "1250-PA Green on grounds, consulted i/p pain level of 8/10 this am, i/p asking if he could have T3 prn for pain to his suprapubic catheter site, notified pcp that i/p used to be on Motrin but was discontinued few days ago since i/p is awaiting surgery anytime, i/p on regular Tylenol only at this time, no T3 ordered.
>
> 1305—notified i/p about the above, ip becomes disappointed & was raising his voice, told i/p that tomorrow the regular provider will be here & will re-consult her again." (ECF No. 41-4, at p. 8).
>
> 10/17/21, LVN Thomas, 17:30: "IP lying in bed. IP argumentative about Tylenol order, requested 3 pills instead of 2, when I declined to administer 3 pills and explained the order to him he said he will take care of it. Respirations even/unlabored. No SOB. IP denies pain/difficulty breathing. No complaints at this time. IP refused to lift shirt to look at catheter. . . . .(ECF No. 41-4, at p. 7).
>
> 10/18/21, LVN Thomas, 2:43: "I/P resting in bed. Respirations even/unlabored. No distress noted. Refused vital signs and assessment. Refusal complete. Call

4

light and fluids available at bedside.  IP instructed to notify staff of any changes/needs, verbalized understanding.  Will continue with current POC."

10/18/21, RN Angara: "0950—Dr. Kandlhorova in to see i/p, made aware of increasing pain lately from suprapubic catheter, i/p asking for stronger pain meds, pcp will add T3 to meds." (ECF No. 49, at p. 20).

10/18/21, P&S Kandkhorova, 15:32 PDT: "Patient 63 yr old male c/o suprapubic abdominal pain which is getting worse since yesterday.  He describe as sharp pain with radiation to the scrotal area, intensity of the pain 8/10, he has discharge in the catheter small amount and bloody with purulent consistency.  Urine culture showed Morganella morganil bacteria which is sensitive to Levaquin.  A/P: UTI due to suprapubic catheter insertion—consider to start Levaquin 500 mg qd for 7 days and for pain resume Tylenol #3 1 tab po tid prn." (ECF No. 49, at p. 26)

10/21/21, RN Angara: "1015—wound care done—noted some sediments along the suprapubic catheter tubing, no skin infection around the insertion site, applied new dressing, i/p awaits for schedule for removal of catheter."

10/24/21, LVN Thomas, 19:44 PDT: "IP up walking around room.  Calm, cooperative and able to make needs known.  IP stated 'I apologize for being rude last week, thank you for helping me.'  Respirations even/unlabored.  No SOB.  Dressing to suprapubic catheter is clean, dry and intact.  IP reports normal urination, denies pain.  IP also reports bilateral low back pain 3-4/10, states it may be due to him lying around in bed.  IP encouraged to move aroung [sic] and drink fluid.  Communication also sent to PCP for F/U with PCP in am per IP request.  Deu meds were given.  IP instructed to notify staff of any needs/changes, verbalized understanding.  Fluids and call light available at bedside. Will continue with current POC."

10/28/21, [illegible signature]: "cipro 500g . . . for 7 day, Tylenol #3 [] pain, Follow up urology in 2-3 weeks"[1]

10/28/21, Dr. Hou, 11:01 PDT: "Patient underwent SP tube placement with subsequent retained bladder foreign body. . . . We then made an incision next to the suprapubic insertion site.  Dissection was carried down, following the catheter, to the bladder with Bovie where the catheter still was unable to be freed.  It would appear that the catheter is stuck in the intramuscular portion of bladder and unable to be removed atraumatically.  We then made an cystotomy incision and catheter was freed.  Catheter was inspected and noted to be remove intact.  Intruluminal portion of the catheter noted to be filled and clogged with soft tissue.  Using 2-0 Vicryl bladder was closed. Cystoscopy was again repeated, and the closure noted to be water tight.  We then close the fascia with 2-0 Vicryl and then skin with 2-0 Chromic.  18F Foley was placed.  Patient tolerated the procedure well.  There was no complication noted." (ECF No. 49, at p. 44)

---

[1] This is the Court's best approximation of the handwriting on this record.

Plaintiff also included summaries of interviews done by California Correctional Health Care Services as part of investigation of Plaintiff's grievance. (ECF No. 49, at 39-40). The summary of Plaintiff's interview states:

> Grievant claims that PA Green disregarded his complaint of lower abdominal pain on October 17, 2021. Grievant further claims that PA Green refused to refill expired order for Tylenol #3, which had previously relieved his pain from suprapubic catheter. Also, grievant claims that PA Green is negligent for not addressing his pain adequately. Grievant stated that RN Angara was the nurse who attended to him during this time.

The summary of RN Angara states:

> Tiffany Angara, RN, was the nurse assigned to the OHU and reported that the grievant had requested Tylenol with codeine for chronic lower abdominal pain due to malfunctioning of the suprapubic catheter. Aside from subjective complaints of increased abdominal discomfort, there were no objective findings. RN Angara had reported to PA Green about the patient's abdominal discomfort during OHU rounds that weekend and stated that PA Green did not prescribe Tylenol with codeine.

The summary of Defendant Green's interview states:

> PA Green stated he was aware of the grievant's chronic abdominal discomfort due to suprapubic catheter malfunction. Furthermore, he also was aware that the grievant was off of NSAIDs due to scheduled surgery for removal of suprapubic catheter. Per PA Green, the grievant did not have acute abdomen pain or any diagnosis that would warrant medication at that time. PA Green advised Tylenol 650 mg, which grievant had received three times that day for his pain.

Defendant Green also submitted his own declaration under penalty of perjury, which states in relevant part:[2]

> As a Physician's Assistant, I can order tests and medications, and can devise treatment plans for patients. . . .
>
> [I]nmate Reid was not my patient. On the day in question, October 17, 2021, I was the on-call provider for any emergency medical issues that an inmate was experiencing. At one point that day, I was treating another inmate-patient when Nurse T. Angara, who was attending to inmate Reid, approached me. The nurse informed me that Reid was apparently scheduled for some sort of surgery, and had been give [sic] Motrin for pain. However, the Motrin had been stopped due to the upcoming surgery. The nurse further states that inmate Reid was requesting a particular narcotic pain medication, Tylenol 3, for suprapubic catheter pain. I was also informed that Reid was being given regular Tylenol for his pain.

---

[2] Paragraph numbers omitted.

6

> Reid had a suprapubic catheter on the day in question, and such catheters frequently become infected. However, Nurse Angara did not mention that Reid was dealing with an infection due to the catheter, and she did not mention that his catheter had become dislodged. In any case, merely having a catheter in place should not require a narcotic pain medication such as Tylenol 3. To the contrary, patients with catheters in place generally do not require any kind of pain medication. Because the nurse did not mention the presence of any infection, there was no need for me to see Reid or to prescribe Tylenol 3 to him simply because he requested it.
>
> I also refrained from providing Reid with Tylenol 3 because I was not the regular doctor in outpatient housing unit, and inmate Reid was not receiving Tylenol 3 for pain on the day in question. Because Reid was being given regular Tylenol for pain as part of his current treatment plan, I did not recommend giving Tylenol 3 to him. Providing Reid with regular Tylenol for his pain was sufficient.
>
> I did not write a note following my interaction with the nurse, as I did not treat Reid.
>
> Reid's chart indicates that Dr. Kandkhorova ordered him Tylenol 3 from October 5, 2021 through October 8, 2021. There was no further order for Tylenol 3 until the same doctor ordered Tylenol 3 for Reid on the following day, October 18, 2021. (ECF No. 41-2, at p. 2-3).

### IV.  LEGAL STANDARDS

#### A. Motions for Summary Judgment

A party may move for summary judgment on a claim or defense. Fed. R. Civ. P. 56(a). Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Albino v. Baca (Albino II)*, 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). If the moving party moves for summary judgment on the basis that a material fact lacks any proof, the Court must determine whether a fair-minded jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322. Additionally, "[a] summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

In reviewing the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record . . . from which a reasonable inference . . . may be drawn;" the court need not entertain inferences that are unsupported by fact. *Celotex*, 477 U.S. at 330 n. 2 (citation omitted). Additionally, "[t]he evidence of the non-movant is to be believed." *Anderson*, 477 U.S. at 255.

In reviewing a summary judgment motion, the Court may consider other materials in the record not cited to by the parties, but is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

**B. Deliberate Indifference to Serious Medical Needs**

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition

8

could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)) (citation and internal quotations marks omitted), *overruled on other grounds by WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (*en banc*).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Toguchi*, 391 F.3d at 1058. Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

## V. DISCUSSION

With these facts and law in mind, the Court turns to Defendant's motion for summary judgment.

\\\
\\\

### A. Whether A Reasonable Jury Could Find Deliberate Indifference

Turning to the merits of Defendant's motion, Defendant Green first argues that "the nurse attending to Plaintiff on October 17, 2021 did not mention that Plaintiff was dealing with an infection due to the catheter or that his catheter had become dislodged, and the records from that date confirm that there was no such infection." (ECF No. 41, at p. 9). Defendant's motion generally cites to his own declaration and a group of medical records without pointing to any specific evidence for this point.

Regarding Green's discussion with Nurse Angara, the closest record the Court could locate for this assertion is the one from Nurse Angara that states "PA Green on grounds, consulted i/p pain level of 8/10 this am, i/p asking if he could have T3 for pain to his suprapubic catheter site, notified pcp that i/p used to be on Motrin but was discontinued few days ago since i/p is awaiting surgery anytime, i/p on regular Tylenol only at this time, no T3 ordered." (ECF No. 41-4, at p. 8). While this note does not state that Nurse Angara informed Green that Plaintiff had an infection or that his catheter was dislodged, it is not clear that this is a full account of what was said. In any event, Plaintiff's contention is that Green should have examined him or inquired further before dismissing his request, and that the examination would have revealed a need for Tylenol 3. Moreover, there is evidence that Green was aware that Plaintiff was in pain. For example, the summary of Green's interview done by California Correctional Health Care Services as part of investigation of Plaintiff's grievance, (ECF No. 49, at 39-40), states "PA Green stated he was aware of the grievant's chronic abdominal discomfort due to suprapubic catheter malfunction. Furthermore, he also was aware that the grievant was off of NSAIDs due to scheduled surgery for removal of suprapubic catheter." Although the summary also says that "Per PA Green, the grievant did not have acute abdomen pain or any diagnosis that would warrant medication at that time," there is a dispute of fact whether Plaintiff was in acute pain.

Additionally, the Court finds no evidentiary support for Green's assertion that "the records from that date confirm there was no such infection." (ECF No. 41, at p. 9). Again, Defendant's brief does not cite to any specific record to support this claim. Moreover, Plaintiff's contention is that Green did not examine Plaintiff or conduct tests to determine the source of the pain. Furthermore, the medical records show that the next day, when another doctor was informed by

Nurse Angara of Plaintiff's complaint of increasing pain and request for medication, that doctor examined Plaintiff and diagnosed him with an infection, and prescribed Tylenol 3 for pain:

> 10/18/21, RN Angara: "0950—Dr. Kandlhorova in to see i/p, made aware of increasing pain lately from suprapubic catheter, i/p asking for stronger pain meds, *pcp will add T3 to meds*." (ECF No. 49, at p. 20).

> 10/18/21, P&S Kandkhorova, 15:32 PDT: "Patient 63 yr old male c/o suprapubic abdominal pain which is getting worse since yesterday. He describe as sharp pain with radiation to the scrotal area, intensity of the pain 8/10, he has discharge in the catheter small amount and bloody with purulent consistency. *Urine culture showed Morganella morganil bacteria which is sensitive to Levaquin. A/P: UTI due to suprapubic catheter insertion—consider to start Levaquin 500 mg qd for 7 days and for pain resume Tylenol #3 1 tab po tid prn*." (ECF No. 49, at p. 26) (emphasis added).

From this record, a reasonable jury could find that Plaintiff did in fact have an infection when Green declined to examine Plaintiff or provide further pain medication.

Defendant Green next argues that "Although Plaintiff was requesting particular narcotic pain medication, Tylenol 3, for suprapubic catheter pain, merely having a catheter in place is not a reason to provide Tylenol 3 to a patient. To the contrary, patients with catheters in place generally do not require any kind of pain medication." (ECF No. 41, at p. 10). Defendant Green only cites to his own declaration in support of this contention, and does not explain his basis for asserting that patients with catheters in place do not require pain medication. Moreover, the medical records show that multiple doctors, both before and after the day in question, prescribed Tylenol 3 for pain to Plaintiff for his medical condition, including the doctor who saw Plaintiff the following day. The records also show that Plaintiff's catheter had significant complications and needed to be removed. In fact, three days before the interaction with Green, Plaintiff had been diagnosed with "suprapubic catheter dysfunction" and was awaiting surgical removal of the catheter. (ECF No. 49, at p. 28-29). Thus, while a patient with a functioning catheter in place may not need pain medication, there is a dispute of fact whether a patient with a dysfunctional catheter that is awaiting surgery to remove that catheter requires pain medication. From this evidence, a reasonable jury could find that Plaintiff's condition at that time did require additional pain medication.

Defendant next repeats the assertion that "[b]ecause there was no infection around the catheter on the day in question, there was no need for Green to see Plaintiff or to prescribe Tylenol 3 to him simply because he requested it." (ECF No. 41, at p. 10). Again, Defendant provides no evidence for the assertion that there was no infection, and given that there was an infection present the following day, a reasonable jury could conclude otherwise.

Defendant also argues that "Green's decision to refrain from providing Plaintiff with Tylenol 3 was also appropriate because he was not the regular doctor in the outpatient housing unit, and Plaintiff was not receiving Tylenol 3 for pain on the day in question." (ECF No. 41, at p. 10). However, Defendant Green's own declaration states "As a Physician's Assistant, I can order tests and medications, and can devise treatment plans for patients." (ECF No. 41-2, at p. 2). Moreover, Nurse Angara requested the medication from Defendant Green, which indicates that Defendant Green was able to prescribe pain medication even though he was not the regular doctor in outpatient housing. Thus, Green's suggestion that he could not provide such medication because he was not the regular doctor is not supported by the record. Nor does the fact the Plaintiff was only receiving Tylenol at the time support Green's position that he was not deliberately indifferent. After all, Plaintiff's claim is that his condition had deteriorated such that he required additional pain medication beyond what he was already receiving.

Defendant Green next points to records that Plaintiff later refused to lift his shirt or let a nurse examine his vital signs. (ECF No. 41, at p. 10). While such records may point to Plaintiff being uncooperative after being refused his requested treatment, it does not appear relevant to the issue of whether he had a serious medical need that Green failed to address.

Defendant Green finally summarizes his position that "[t]he evidence establishes that because there was no infection around Plaintiff's catheter that day, and blood was not coming out of it, there was no need for Plaintiff to be given Tylenol 3, a narcotic pain medication." (ECF No. 41, at p. 10). In addition to the contrary evidence of an infection, discussed above, there is also evidence that blood *was* coming out of Plaintiff's catheter, as noted in the record from the following day. (ECF No. 49, at p. 26) ("10/18/21, P&S Kandkhorova, 15:32 PDT: "he has discharge in the catheter small amount and bloody with purulent consistency.").

12

But setting aside the evidentiary issues regarding whether Plaintiff did in fact have an infection and blood coming out of the catheter, Defendant's summary fails to address another central issue: whether Plaintiff needed the Tylenol 3 for pain. Indeed, Defendant Green's motion never addresses the question of Plaintiff's pain. It is undisputed that Nurse Angara informed Defendant Green that Plaintiff had pain and was requesting pain medication. Defendant Green does not deny that he was aware of this. Nor does he deny that Tylenol 3 would address Plaintiff's pain. Indeed, he provides no reason for failing to provide pain medication to treat pain. By repeatedly describing Tylenol 3 as "a narcotic pain medication," Green seems to be suggesting that he failed to provide Plaintiff the medication because he believed Plaintiff wanted the Tylenol 3 for its intoxicating effects, rather than for pain reduction. But other than describing Tylenol 3 as a narcotic pain medication, Green does not provide any evidence that Plaintiff was seeking Tylenol 3 for some intoxicating effects, rather than pain. Indeed, nothing in the record suggests this, and not even Defendant Green's declaration states as much.

Thus, construing the evidence in favor of Plaintiff as the non-moving party, a reasonable jury could find that Defendant Green was aware of Plaintiff's pain, and yet purposefully failed to address that pain. It is clearly established that pain can be a serious medical need, and the failure to address pain can constitute deliberate indifference to that need. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) ("This second prong—defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."); *McGuckin v. Smith* 974 F.2d 1050, 1059–1060 (9th Cir. 1992), *overruled in part on other grounds by WMX Technologies, Inc. v. Miller* 104 F.3d 1133 (9th Cir. 1997) ("The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment.").

**B. Whether a Reasonable Jury Could Find Punitive Damages**

Defendant next argues that summary judgment should be granted against Plaintiff's claim for punitive damages "because, as the evidence cited above shows, he lacks evidence that

Defendant Green acted with the 'evil motive or intent' or the 'reckless or callous indifference to the federally protected rights of others,' necessary to justify his claim for punitive damages." (ECF No. 41, at p. 11). Besides making this conclusory statement, Defendant Green does not present any developed argument or support for this position. It appears to rely on the same evidence examined in the first argument, where the Court found disputes of fact regarding material facts such as whether Plaintiff had a substantial need for pain medication and further treatment, and whether Defendant Green was deliberately indifferent to Plaintiff's pain. For the reasons discussed above, the Court finds that, based on the evidence presented and construing it in favor of the non-moving party, a reasonable jury could find that Defendant Green acted with callous indifference to Plaintiff's medical condition, including failing to provide additional pain medication or otherwise examining or treating Plaintiff.

**C. Whether Defendant Green is Entitled to Qualified Immunity**

Finally, Defendant Green argues that he is entitled to qualified immunity because "it would not have been evident to a reasonable prison official that a court could find that an Eighth Amendment violation occurred when Defendant Green, among other things, recommended that Plaintiff be provided with Tylenol for pain relief instead of Tylenol 3, a narcotic pain medication. Nor is there any clearly established law that would show Defendant, based on the information he had received from the nurse regarding Plaintiff's condition, should have known that a decision to refuse Plaintiff's request for narcotic medication, rather than regular Tylenol, violated the constitution." (ECF No. 41, at p. 13).

Defendant again does not provide any developed argument or analysis and appears to rely on the same disputed evidence examined above. As discussed above, the Court finds that, construing all disputed facts in favor of the non-moving party, Defendant's Green's conduct would have violated clearly established caselaw. It is clearly established that a failure to respond to Plaintiff's pain constitutes deliberate indifference to serious medical needs. Johnson v. Patel 2015 WL 3866226, at *24 (C.D. Cal., June 18, 2015, No. CV 14-1598-RGK KK) ("the Ninth Circuit and other federal Courts of Appeals have recognized deliberate indifference may be inferred where a physician repeatedly ignores a prisoner's complaints of pain, especially where the pain is excruciating") (citing cases). Plaintiff has submitted sufficient evidence that

Defendant Green was aware of his pain, yet purposefully disregarded Plaintiff's need for additional pain medication.  In light of Plaintiff's previous prescription for Tylenol 3 for this condition, as well as the fact that the doctor the next day prescribed this medication, and the lack of any evidence that Plaintiff requested the medication for its intoxicating effects, the fact that it was a narcotic pain mediation is not a sufficient reason to disregarding Plaintiff's need for additional medication.  Rather, the evidence indicates that Plaintiff was in severe pain, required Tylenol 3 to manage that pain, and that Defendant Green failed to respond to that need without any medical basis.

## VI. CONCLUSION AND ORDER

Based on the foregoing, it is hereby **RECOMMENDED** that:

1. Defendant's Motion for Summary Judgment (ECF No. 41) be DENIED.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **July 1, 2024**                           /s/ Erica P. Grosjean
                                                              UNITED STATES MAGISTRATE JUDGE